1  Christopher Massenburg (State Bar No. 309621)
   cmassenburg@mgmlaw.com
2  Lindsey Weiss (State Bar No. 268076)
   Lweiss@mgmlaw.com
3  **MANNING GROSS + MASSENBURG LLP**
   444 South Flower Street
4  Suite 4100
   Los Angeles, CA 90071
5  Tel.:   (213) 622-7300
   Fax:   (213) 622-7313
6
7  Attorneys for Defendant
   **GREENE, TWEED & CO., INC.**

8                UNITED STATES DISTRICT COURT
9                CENTRAL DISTRICT OF CALIFORNIA

10 | STEPHEN C. PEET,                            | Case No. **2:22-cv-6672**
11 |                                             |
   |         Plaintiff,                          | **DEFENDANT GREENE, TWEED &**
12 |      v.                                    | **CO., INC.'S NOTICE OF REMOVAL**
   |                                             | **OF ACTION**
13 | ARMSTRONG INTERNATIONAL, INC.;
14 | AURORA PUMP COMPANY; CLEAVER
   | BROOKS, INC., f/k/a CLEAVER-BROOKS, a
15 | Division of AQUA-CHEM, INC.; CRANE CO.;
   | CROWN CORK & SEAL COMPANY, INC.;
16 | FLOWSERVE US, INC., solely as successor to
   | ROCKWELL MANUFACTURING
17 | COMPANY; INC CORPORATION, Individually
   | and as successor in interest to NORTHERN PUMP
18 | COMPANY, PEERLESS PUMP COMPANY and
   | STEARNS ELECTRIC COMPANY;
19 | FRASER'S BOILER SERVICE, INC.;
   | GARDNER DENVER, INC.; GENERAL
20 | ELECTRIC COMPANY; GOULDS PUMPS,
   | LLC; GREENE, TWEED & CO., INC.; HILL
21 | BROTHERS CHEMICAL COMPANY;
22 | HOPEMAN BROTHERS, INC.; IMO
   | INDUSTRIES, INC., Individually and as
23 | successor in interest to DELAVAL TURBINE
   | INC. and SHARPLES, INC.; METALCLAD
24 | INSULATION, LLC; PARAMOUNT GLOBAL,
25 | f/k/a
26 |         Defendant(s).

1
DEFENDANT GREENE, TWEED & CO., INC.'S NOTICE OF REMOVAL OF ACTION

# TABLE OF CONTENTS

I. BACKGROUND FACTS ........................................................................... 5

II. UNITED STATES COAST GUARD SPECIFICATIONS GOVERNING GASKETS AND PACKING ................................................................... 5

III. GROUNDS FOR REMOVAL .................................................................. 10

IV. FEDERAL OFFICER REMOVAL (28 U.S.C. § 1442(A)(1)) ..................... 12

V. JURISDICTION ...................................................................................... 16

VI. INSTRADISTRICT ASSIGNMENT ........................................................ 16

VII. PROCEDURAL COMPLIANCE .............................................................. 17

VIII. RESERVATION OF RIGHTS/DENIAL OF LIABILITY ........................... 18

# TABLE OF AUTHORITIES

*Akin v. Ashland Chem. Co.*, 156 F.3d 1030,1034 (10th Cir. 1998) .............................................. 18

*Boyle v. United Technologies, Inc.*, 487 U.S. 500, 512-513 (1988) ............................................. 16

*Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960) ................................................................ 18

*Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016) .................................................. 14, 16

*Doe v. Kerwood*, 969 F.2d 165, 168 (5th Cir. 1992) ..................................................................... 18

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) ................................... 12

*Ely Valley Mines, Inc. v. Hartford Accident, et al.*, 644 F.2d 1310, 1314-15(9th Cir. 1981) ...... 18

*Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) ...................................................... 13

*Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin Agency* .................................................. 18

*Isaacson v. Dow Chem. Co.*, 517 F. 3d 129, 135-37 (2d Cir. 2008) ....................................... 13, 15

*Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999) ............................................................... 15, 17

*Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010) ................................................... 16

*Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438-39 (5th Cir. 2000) ......................................... 14, 16

*Leite v. Crane Co.*, 749 F. 3d 1117,1122, 1124 (9th Cir. 2014) ...................................... 12, 14, 15

*Mesa v. California*, 489 U.S. 121, 123-135 (1989) ...................................................................... 13

*Miller*, 275 F.3d at 423 .................................................................................................................. 16

*Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996) ........................................ 16

*Papp v. Fore-Kast Sales Co.*, 824 F.3d 805, 809, 812, 813 (3rd Cir. 2016) .................... 13, 15, 17

*Ruppel v. CBS Corp*, 701 F.3d 1176, 1181, 1186, 1188 (7th Cir. 2012) .................... 13, 14, 15, 17

*Sawyer*, 860 F.3d at 259 ............................................................................................................... 16

*Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995) ................................................. 16

*Thermitron Prods., Inc. v. Hermansdorfer* (1976) 423 U.S. 336 ................................................. 19

*Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007) ..................................................... 14

*Willingham v. Morgan*, 395 U.S. 402, 405, 407 (1969) ......................................................... 17, 19

*Winters v. Diamond Shamrock Chem. Co.*, 149 F. 3d 387, 396-397, 398 (5th Cir. 1998) .... 13, 16

*Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940) ................................................... 16

**RULES**

28 U.S.C. § 1442(a)(1) .................................................................................. 5, 6, 12, 15, 16, 18

28 U.S.C. § 1446 ............................................................................................... 10, 12, 17

28 U.S.C. § 1446(d) ......................................................................................................... 17

28 U.S.C. § 1447(c) ......................................................................................................... 18

28 U.S.C. §§ 1332(a)(3) .................................................................................................. 17

Federal Practice and Procedure § 3727, at 166-68 (3d ed. 1998) ................................... 18

DEFENDANT GREENE, TWEED & CO., INC.'S NOTICE OF REMOVAL OF ACTION

# NOTICE OF REMOVAL OF ACTION

Pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, Defendant Greene, Tweed & Co., Inc. ("Greene Tweed") hereby removes this action from the Superior Court for the County of Los Angeles, California (the "Superior Court"), to the United States District Court for the Central District of California. Greene Tweed provides the following short and plain statement of the grounds for removal:

## I. BACKGROUND FACTS

1. Greene Tweed was served with a summons and complaint on August 19, 2022, in connection with the civil action pending before the Superior Court, Case Number 22ST-CV-25238. (Summons and Complaint attached collectively as **Exhibit A**.)

2. Plaintiff, Stephen C. Peet ("Plaintiff"), alleges that his mesothelioma was caused by his work with and around a wide variety of asbestos-containing products, including Greene Tweed products, while serving as a boiler tender aboard several vessels in the United States Coast Guard ("U.S. Coast Guard" or "Coast Guard") from 1964 through 1986. (Ex. A (Compl.) at Exhibit A). Specifically, Plaintiff alleges that he worked as a boiler tender aboard several vessels during his service in the Coast Guard, and routinely performed –and was in the immediate vicinity of others performing— maintenance, repair, removal and replacement of shipboard equipment and components. (*Id*.) The alleged exposures in this case relate to Mr. Peet's service in the U.S. military. (*Id*.)

3. As to Greene Tweed, Plaintiff's causes of action sound primarily in negligence and strict liability, negligent misrepresentation, and fraud by nondisclosure. (*See*, *e.g.*, Ex. A (Compl.) ¶¶ 18-39, 40-53, 54-62, 63-72.)

## II. UNITED STATES COAST GUARD SPECIFICATIONS GOVERNING GASKETS AND PACKING

1. All U.S. Navy / Coast Guard purchases are made under some form of contract, whether through competitive bidding or through negotiation. The basis for a contract between the U.S. Navy / Coast Guard and a manufacturer is a precise

specification of the Navy's / Coast Guard's needs and requirements. Machinery and equipment manufactured for use on United States Navy / Coast Guard ships, including consumable components such as packing and gaskets, must strictly comply with reasonably precise specifications and the military approval process. (*See* Herfel Declaration, **Exhibit D** ¶¶ 15-16).

2. Numerous Military, Federal and Commercial Specifications, Standards and Drawings are incorporated by specific reference into each specification, forming a part of the specification set applicable to any particular piece of equipment. Adherence to these specifications is part of the contractual obligations between the contractor and the U.S. Navy / Coast Guard. Accordingly, all materials used in ship procurement are subject to a thorough review by the U.S. Navy / Coast Guard and specifically approved for use by the U.S. Government. (Ex. D ¶ 17).

3. Before a manufacturer received authorization to manufacture or supply machinery, for/to the U.S. Navy / Coast Guard, all of the drawings, plans, technical manuals and other design documentation first had to be inspected and approved by the U.S. Navy/ Coast Guard. To the extent that any machinery or equipment supplied by a manufacturer contained or incorporated asbestos, it would have been specifically required or approved by the Navy / Coast Guard through Military Specifications and/or the design approval process. Machinery and equipment manufactured for use on U.S. Navy / Coast Guard ships must strictly comply with reasonable precise specifications and the military approval process. Accordingly, every facet of the design and manufacture of any piece of equipment that might have been manufactured or supplied to the U.S. Navy / Coast Guard for use on a Navy / Coast Guard ship would have been controlled by the U.S. Government. (Ex. D ¶¶ 18-19).

4. For example, compressed-asbestos sheet gasket material (symbol 2150), approved for use aboard U.S. Navy and U.S. Coast Guard ships, was manufactured in accordance with precise Navy Department, U.S. Military or Federal Specifications which required qualification testing, as noted above. Thus, as was also noted above, each

company manufacturing compressed asbestos sheet in accordance with these specifications was providing a product that was essentially identical in composition, size, and performance. Therefore, any compressed-asbestos sheet gasket material sold to the U.S. Navy / U.S. Coast Guard was interchangeable among those from other approved suppliers and manufacturers. (Ex. D ¶ 20).

5. For any initial stock of consumable or "General Stores" materials provided with new machinery or components, in accordance with U.S. Navy / U.S. Coast Guard requirements, was typically provided by the manufacturer from U.S. Government-approved suppliers of those materials. Consumable or General Stores materials used after the initial stock of spares were exhausted, if they were provided, were purchased by the U.S. Navy / Coast Guard directly from the approved manufacturers of the material(s) through the U.S. Navy's / Coast Guard's normal contracting methods. General Stores, such as packing and gasket material, are not considered by the U.S. Navy / Coast Guard to be a "repair part," but rather are consumable items that are used and expended on a frequent basis. The definition of whether an item or material is considered to be General Stores or a repair part is not based on the assignment of a "Part Number" by the manufacturer Chapter 9950 (previously Chapter 95) of the Naval Ships Technical Manual, entitled "Gaskets and Packing," gives specific instructions for the selection, removal, fabrication, and installation of gaskets and packing board U.S. Navy and U.S. Coast Guard ships. (Ex. D ¶¶ 21-23).

6. Chapter 9950 of the Naval Ships Technical Manual, which incorporates Bureau of Ships Standard Drawing B-153, "Standard Application of Gaskets and Packing," describes the U.S. Navy's / U.S. Coast Guard's system which takes packing and gasket material specifications and matches them with a standard four-digit identification code. The result was an easy to use chart that illustrated every type of "stock" packing or gasket material and for what purpose it could be used aboard naval vessels. This is important to understand since ordering gasket or packing material using proprietary or trade names was expressly forbidden by Chapter 9950 of the Naval Ships

Technical Manual. In the early 1960s, the Department of Defense published "Schedule of Piping, Valves, Fittings and Associated Piping Components for Surface Ships," Military Standard MIL-STD-777, covering the design, maintenance and repair of U.S. Navy and U.S. Coast Guard surface ship piping systems. (Ex. D ¶¶ 24-25).

7. The U.S. Navy's / Coast Guard's specifications governing equipment supplied to the U.S. Navy / Coast Guard also covered the nature of any communication affixed to or accompanying the equipment. The U.S. Government had detailed specifications that governed the form and content of technical manuals to be delivered with the equipment supplied to the U.S. Navy / Coast Guard. Each technical manual is subjected to extensive review by the U.S. Navy / Coast Guard. Corrections to the preliminary or draft manual were required before the U.S. Navy accepted the technical manual for use. The corrections range from minor typographical errors to significant issues involving design flaws and personnel safety issues. (Ex. D ¶¶ 26-27).

8. A vendor or supplier of consumable components, such as Greene Tweed would not have been permitted (either under the specifications or as a matter of U.S. Navy practice) to include any type of warning or cautionary statement not required or approved by the U.S. Navy / Coast Guard without prior discussion, approval, and acceptance by the U.S. Navy / Coast Guard. The reasons for the U.S. Government's detailed control over and review and approval of all written communications and technical manuals for equipment was to ensure consistency of that information with the overall goals and priorities of the U.S. Navy / Coast Guard in its operations. The information provided with regard to equipment had to be consistent with the U.S. Navy's / Coast Guard's overall evaluation of the appropriate types and level of information its personnel required to efficiently perform their duties. (Ex. D ¶ 28).

9. In 1943 the U.S. Navy, which at that time included the U.S. Coast Guard, and the U.S. Maritime Commission, predecessor to the U.S. Maritime Administration, published Minimum Requirements for Industrial Safety and Health in Contract Shipyards. Among the industrial diseases specifically identified in this publication was Asbestosis.

General recommendations were also provided of methods to prevent shipyard workers from contracting this disease. Before publishing this document and distributing it to every shipyard in the United States, Philip Drinker, Ph. D., the Chief Health Consultant to the U.S. Maritime Commission's Division of Shipyard Labor Relations, along with a team to assist him, toured every major shipyard on the East Coast, Gulf Coast, West Coast and Great Lakes to see how asbestos-containing insulation and lagging were handled and installed. After each visit, he or his staff left behind specific instructions to the shipyard on how to improve their protection of its employees with regards to asbestos dust. (Ex. D ¶ 29).

10. The U.S. Government, through the Armed Forces and other entities, was and remains, one of the world's largest heavy industrial concerns. Every day for over 100 years, thermal insulation materials, gaskets, and packing have been removed, fabricated, and installed by shipyards and ship repair facilities owned by the United States. In the early 1940s, the U.S. Navy's Bureau of Medicine and Surgery initiated its own industrial hygiene program to provide greater protection for its uniformed and civilian workforce from the effects of chronic exposure to asbestos. The U. S. Navy's Bureau of Medicine and Surgery has continued and expanded its Industrial Hygiene mission through the present day. As a result of these programs from the 1940s up to the present day, the United States Government as a whole, including the U.S. Navy and U.S. Coast Guard, developed and acquired state-of-the-art knowledge concerning potential risks or hazards relating to work with or around a multitude of products and materials, including those which contained asbestos. It is inconceivable that a manufacturer, such as Greene Tweed, would have had the same level of sophisticated knowledge as the Navy / Coast Guard concerning potential asbestos hazards. In fact, the United States Government, including the U.S. Navy and U.S. Coast Guard, specifically possessed information and knowledge superior to that of its contractors on issues of asbestos-related industrial hygiene associated with the use of asbestos-containing components or materials in naval and merchant marine vessels. (Ex. D ¶ 31).

11. The U.S. government, through its different branches of the Armed Forces, was and remains one of the world's largest heavy industrial concerns. Every day for over 100 years, thermal insulation materials, electrical insulation materials, thermosetting plastics, gaskets, and packing have been removed, fabricated, and installed by government owned and operated shipyards, ship repair facilities, and shipbuilding contractors. Due to the Navy's sophisticated occupational health and industrial hygiene programs, the military services as a whole developed and acquired state of the art knowledge concerning potential risks or hazards relating to work with or around asbestos-containing materials and products. The Navy / Coast Guard possessed information and knowledge superior to that of companies manufacturing shipboard products on issues of asbestos-related industrial hygiene. This specifically included any potential risks associated with the use of asbestos-containing components or materials on or in shipboard products, including those alleged to have been manufactured and supplied by Greene Tweed. (Ex. D ¶ 33).

## III. GROUNDS FOR REMOVAL

1. This Notice of Removal has been timely filed, in accordance with U.S.C. §1446(b), within thirty days of the date that Greene Tweed was served with Plaintiff's Complaint.

2. This action is being removed on federal officer grounds pursuant to 28 U.S.C. § 1442(a). The basis for removal is that this action involves a person (Greene Tweed) who, in relation to the claims being stated against it, acted under the authority, direction, and control of an officer or agency of the United States and who can state a colorable federal-law based "government contractor" defense to those claims.

3. A case is removable under 28 U.S.C. § 1442(a) "when the plaintiff discloses sufficient facts for federal officer removal…" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006). Plaintiff's Complaint makes it clear that Plaintiff Stephen Peet's alleged asbestos exposure resulted from his alleged contact with Greene Tweed's products that were manufactured and/or supplied to the United States military while

serving in or working for the United States Coast Guard. (Ex. A (Compl.). at Ex. A). See *Durham*, 445 F.3d at 1253. The facts in *Durham* are closely analogous to those in the case at bar. The plaintiff's complaint in *Durham* named Lockheed as a defendant and alleged asbestos exposure at Air Force facilities at which the plaintiff worked, but did not specify which Lockheed products allegedly exposed him to asbestos. *Id*. at 1249. Lockheed removed the case to federal court within 30 days after receiving discovery responses disclosing that the plaintiff was exposed to asbestos while working on its military aircraft. *Id*. at 1249. The plaintiff filed a motion to remand, which was granted by the district court. *Id*. at 1249-1250. The plaintiff did not dispute, and the district court did not deny, that the case was removable under 28 U.S.C. § 1442(a). However, the district court found that the case was not timely removed, and remanded the case back to state court. *See Id*. at 1249-1250. The Ninth Circuit reversed the district court's ruling, holding that Lockheed properly and timely removed based on federal officer jurisdiction. *Id*. at 1254. The Ninth Circuit, recognizing "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret 1442 broadly in favor of removal," explained that a case is properly removable under federal officer jurisdiction once "the plaintiff discloses sufficient facts for federal officer removal…." *Durham*, 445 F.3d at 1253; *see also Leite v. Crane Co.*, 749 F. 3d 1117,1122 (9th Cir. 2014) (explaining that a case is properly removable if facts exist supporting removal jurisdiction).

   4. Accordingly, as in *Durham*, Plaintiff's Complaint clearly alleges that Mr. Peet's alleged exposure to asbestos resulted from his contact with asbestos-containing products manufactured, distributed, or installed by Greene Tweed while working on or around military ships in the United States Coast Guard, and therefore this matter is ripe for removal pursuant to 28 U.S.C. § 1442(a).

   5. Greene Tweed offers at this time the following statement and citations to authority in satisfaction of its obligations under 28 U.S.C. § 1446 to provide a short and plain statement of the legal and factual basis for its removal. However, if Plaintiff pursues

a motion to remand, Greene Tweed requests an opportunity to respond more fully with additional factual and legal support for this Notice of Removal.

## IV.   FEDERAL OFFICER REMOVAL (28 U.S.C. § 1442(A)(1))

1. Removal is proper under 28 U.S.C. § 1442(a)(1) when facts are disclosed establishing that: (1) the removing defendant is a person within the meaning of the statute; (2) it performed the complained of action at the direction of a federal officer and under color of federal office; (3) there is a causal nexus between the defendant's actions and the plaintiff's claims; and (4) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 123-135 (1989); *Papp v. Fore-Kast Sales Co.*, 824 F.3d 805, 812 (3rd Cir. 2016); 28 U.S.C. § 1442(a)(1). Greene Tweed meets all four elements and is therefore entitled to remove this action pursuant to the federal officer removal statute.

2. First, as a corporation, Greene Tweed is a "person" for purposes of 28 U.S.C. § 1442(a)(1). *Papp,* 824 F.3d at 812; *Ruppel v. CBS Corp.*, 701 F. 3d 1176, 1181 (7th Cir. 2012); *Isaacson v. Dow Chem. Co.*, 517 F. 3d 129, 135-36 (2d Cir. 2008); *Winters v. Diamond Shamrock Chem. Co.*, 149 F. 3d 387, 398 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).

3. Second, in designing, manufacturing, supplying gasket and packing materials for the United States military, Greene Tweed acted as a government contractor under the detailed and ongoing direction and control of one or more federal officers.

4. To the extent Greene Tweed supplied asbestos-containing gasket and packing material, it was at the direction of a federal officer, the United States Government, and under color of federal office. The materials at issue were supplied pursuant to military procurement contracts with the United States Government and in compliance with detailed design, testing, and labeling specifications issued and approved by the Government. These specifications dictated the performance testing and material composition of the materials, including the requirement that such material contain asbestos fibers.

5. These specifications dictated the writings and markings required and allowed to be placed on the materials. The design, manufacture, testing, labeling, and shipment of such materials were subject to close, detailed, and ongoing supervision and control of the United States Government and its officers. The Government exercised discretion and approval authority over the products supplied by Greene Tweed. Greene Tweed complied with all of the United States Government's specifications. And, to the extent of any alleged hazards associated with gasket and packing materials, there were no dangers known to Greene Tweed that were not known to the United States. *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438 (5th Cir. 2000); *accord Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014); *Ruppel v. CBS* Corp, 701 F.3d 1176, 1186 (7th Cir. 2012); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016) (derivative sovereign immunity defense applies so long as the contractor can demonstrate that it complied with the Government's specifications regardless of the subject matter of the contract).

6. Greene Tweed's alleged supply of gasket and packing materials under the control, direction, specification, and supervision of the Government thus satisfies the "acting under" requirement, which, like federal officer removal generally, "is 'broad' and is to be 'liberally construe[d]' in favor of the entity seeking removal.'" *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 147 (2007).

7. For purposes of federal officer removal, federal appellate case law is clear that military contractors were "acting under a federal officer" in relation to the design, manufacture, and supply of equipment to the United States Government. *See, e.g., Papp*, 842 F.3d at 812 (*citing Ruppel,* 701 F.3d at 1184-1186). Indeed, Greene Tweed could not change the design or provide additional language—including warning labels—on the gaskets and packing without prior Government authorization. Moreover, not only did Greene Tweed's acquisition of Government approval for any design change require strict compliance with the Government's formal and detailed change process procedures, but the Government retained absolute authority at all times to accept, reject, or modify any aspect of a military government contractor's requested change proposal. Similarly,

Greene Tweed could not change the testing protocol that the gasket and packing material was subjected to because, pursuant to the clear language of the specifications, the testing was to be conducted in facilities approved by the Government and done in accordance with the Government's protocol.

8. Third, there is a causal nexus between Greene Tweed's alleged actions in supplying the gaskets and packing and Plaintiff's claim that his mesothelioma was caused by the asbestos-containing gaskets and packing Greene Tweed supplied to the U.S. Coast Guard pursuant to and in strict adherence to applicable government specifications. In assessing whether a causal nexus exists, the Court credits the defendant's theory of the case. *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999); *Leite v. Crane Co.,* 749 F.3d 1117, 1124 (9th Cir. 2014); *Isaacson v. Dow Chem. Co*., 517 F.3d 129, 137 (2nd Cir. 2008).

9. For this requirement, the federal officer removal has been broadened to include not only causally connected actions under color of federal officer, but also to include *connected* or *associated* acts. *Papp*, 842 F.3d at 813.  Here, a nexus exists because the very acts that form the basis of Plaintiff's claims—Greene Tweed's supply of asbestos-containing products to the U.S. Coast Guard for use on Coast Guard ships and its alleged failure to warn about asbestos hazards—are acts that Greene Tweed performed in accordance and compliance with directions from the Coast Guard. *Ruppel,* 701 F.3d at 1184-1186; *Winters v. Diamond Shamrock Chem. Co*., 149 F.3d 387, 396-397 (5th Cir. 1998) (government contractor who supplied dangerous herbicide Government used to conduct war could remove product liability actions pursuant to federal officer removal statute).

10. Fourth, Greene Tweed asserts a colorable federal defense, namely the "government contractor" defense set forth in *Boyle v. United Technologies, Inc*., 487 U.S. 500 (1988) and its progeny.  The government contractor defense applies to Plaintiff's failure-to-warn claims, failure to test, and any design defect claims in that: (1) the Government approved specifications for the design and labeling of gaskets and packing;

(2) Greene Tweed complied with these specifications, and (3) there were no health hazards associated with asbestos generally, or asbestos-containing gaskets and packing material specifically, of which Greene Tweed was aware and the Government was not. *See Boyle*, 487 U.S. at 512-513; *Jowers v. Lincoln Elec. Co.*, 617 F.3d 346, 352 (5th Cir. 2010); *Miller*, 275 F.3d at 423; *Kerstetter v. Pac. Sci. Co.*, 210 F.3d 431, 438-39 (5th Cir. 2000); *accord Sawyer*, 860 F.3d at 259; *Ruppel,* 701 F.3d at 1188; *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996); *Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995).

11. Greene Tweed also is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based on the separate defense of derivative sovereign immunity set forth in *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940), clarified most recently by *Campbell-Ewald Co.*, *supra*. In *Yearsley*, the Court established that a government contractor acting at the direction and authorization of a government officer is immune from suit based on performance of the government contract. Thus, to establish that defense, Greene Tweed ultimately will have to prove that it supplied its asbestos-containing products to the Coast Guard as authorized and directed by the Government. *Campbell-Ewald Co.*, 136 S. Ct. at 666; *Yearsley*, 309 U.S. at 20-21. *Yearsley* is satisfied here because the acts complained of were performed at the direction of government officers acting under government authorization, and if the Government had performed those acts directly, it would be immune from suit.

12. At this stage, to assert a colorable defense, a defendant is required only to identify facts which, viewed in the light most favorable to the defendant, would establish a defense under *Boyle*, *Ruppel*, or *Yearsley/Campbell-Ewald* at trial, and "need not win his case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). "Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection." *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999). To be "colorable," the defense need not be "clearly

sustainable," as the purpose of the statute is to secure that the validity of the defense will be tried in federal court. *Willingham*, 395 U.S. at 407. Under identified facts similar to those here, federal courts consistently have denied motions to remand state law claims removed under the government contractor defense. *See Papp*, 842 F.3d at 809; *Ruppel*, 701 F.3d at 1178.

## V. JURISDICTION

1. Removal of this action is proper under 28 U.S.C. § 1442. Consistent with the short and plain statement of the law and facts set forth above, the federal district courts have original jurisdiction over the subject matter of this suit under 28 U.S.C. § 1442(a)(1) because Greene Tweed was acting under an officer or agency of the United States Government in relation to any claims asserted against Greene Tweed and Greene Tweed can state at least a colorable defense under federal law to any such claims. *See Papp*, 842 F.3d at 809.

2. Section 1442(a)(1) authorizes removal of the entire case even if only one of the controversies it raises involves a federal officer or agency.

3. The Superior Court is located within the judicial district overseen by the United States District Court for the Central District of California, making venue proper. *See* 28 U.S.C. §§ 1332(a)(3) and 1441(a).

## VI. INSTRADISTRICT ASSIGNMENT

1. Because this Court is the United States District Court for the district and division embracing the state court action in which this case was filed, it is the appropriate Court for removal under 28 U.S.C. § 1446(a). However, Greene Tweed notes that if few, if any, of the events or omissions giving rise to the claim appear to have occurred in this district and, as such, pursuant to 28 U.S.C. § 1404(a), the Court may order the action transferred to another district *sua sponte*. Greene Tweed reserves the right to move the Court for transfer to another district.

///

## VII. PROCEDURAL COMPLIANCE

1. Greene Tweed is not required to obtain the consent of any other defendants to remove this action in its entirety under section 1442(a)(1). *Huntingdon Valley Club Condo. Ass'n v. Pa. Hous. Fin Agency*, 2005 U.S. Dist. LEXIS 234,*6, 2005 WL 44524 (E.D. Pa. 2005) (*citing Akin v. Ashland Chem. Co.*, 156 F.3d 1030,1034 (10th Cir. 1998); *Doe v. Kerwood*, 969 F.2d 165, 168 (5th Cir. 1992); *Ely Valley Mines, Inc. v. Hartford Accident and Indem. Co.*, 644 F.2d 1310, 1314-15 (9th Cir. 1981); *Bradford v. Harding*, 284 F.2d 307, 310 (2d Cir. 1960); *see also* 14C Wright, Miller & Cooper, Federal Practice and Procedure § 3727, at 166-68 (3d ed. 1998)).

2. In addition to Plaintiff's Complaint, attached as Exhibit A, Greene Tweed has attached those documents required by 28 U.S.C. § 1446(a) as **Exhibit B**.

3. Pursuant to 28 U.S.C. § 1446(d), Greene Tweed is filing written notice of this Notice of Removal with the Los Angeles County Superior Court concurrently with the filing of this Notice of Removal and will serve the same on counsel of record. A copy of the Notice of Filing Notice of Removal (without exhibits) as is being filed is attached as **Exhibit C**.

4. A court cannot remand a properly removed case for discretionary or policy reasons, such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Prods., Inc. v. Hermansdorfer* (1976) 423 U.S. 336. The federal officer removal statute, 28 U.S.C. § 1442(a)(1), is not narrow nor limited, and it should not be frustrated by a narrow or grudging interpretation. *Willingham v. Morgan*, 395 U.S. 402, 405 (1969).

5. If Plaintiff files a motion to remand this action, Greene Tweed respectfully requests an opportunity to respond more fully in writing, including submission of additional affidavits and authority.

///

///

## VIII. RESERVATION OF RIGHTS/DENIAL OF LIABILITY

1. Nothing in this Notice is intended or should be construed as any type of express or implied admission by Greene Tweed of any fact alleged by Plaintiff, of the validity of the merits of any of Plaintiff's claims and allegations, or of any liability for the same, each and all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Greene Tweed's rights, claims, remedies, and defenses, either procedural or substantive, in connection with this action, al of which are hereby expressly reserved.

**WHEREFORE**, Defendant Greene Tweed requests that this Court assume jurisdiction over this matter on removal from the Los Angeles County Superior Court.

Dated: September 16, 2022

Respectfully Submitted,
**MANNING GROSS + MASSENBURG LLP**

By _____
Christopher O. Massenburg (Bar No. 309621)
One Canal Place
365 Canal Street, Suite 3000
New Orleans, LA 70130
Phone: (504) 535-2880
Fax: (504) 535-2886

-and-

**MANNING GROSS + MASSENBURG LLP**

By _____
Lindsay Weiss, Esq. (Bar No. 268076)
444 S. Flower Street, Suite 4100
Los Angeles, California 90071
Tel: (213) 622-7300
Fax: (213) 622-7313

-and-

**MANNING GROSS + MASSENBURG LLP**

By _____
David M. Glaspy (State Bar No. 95332)
One Walnut Creek Center
100 Pringle Avenue, Suite 750
Walnut Creek, CA 94596
Telephone: (925) 947-1300
Facsimile: (925) 947-1594

**ATTORNEYS FOR DEFENDANT
GREENE, TWEED & CO., INC.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the above and foregoing pleading was filed electronically with the Clerk of Court and served upon all counsel of record using the CM/ECF system on this 16th day of September, 2022.

_____

Christopher O. Massenburg